UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDUCATIONAL ASSISTANCE FOUNDATION FOR THE DESCENDANTS OF HUNGARIAN IMMIGRANTS IN THE PERFORMING ARTS, INC., | ) ) ) ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 11-1573 (RBW) |
| UNITED STATES OF AMERICA, | ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM OPINION**

The plaintiff, Educational Assistance Foundation for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. ("Foundation"), challenges the Internal Revenue Service's ("IRS") decision to revoke its status as a tax-exempt organization under 26 U.S.C. § 501(c)(3) (2006). Amended Complaint for Declaratory Judgment ("Am. Compl.") ¶¶ 1, 12, 27–31. In reaching its decision to revoke the Foundation's tax-exempt status, the IRS relied in part upon a document that the Foundation asserts is protected by attorney-client privilege. Plaintiff's Motion to Preclude the Government From Introducing Privileged Letter From Barrett Weinberger to Attorney Stephen Bolden and the Entire Administrative Record, and For Related Relief ("Pl.'s Mot.") at 3–4; United States' Memorandum Regarding Allegedly Privileged Document ("Def.'s Opp'n") at 2. The Foundation's motion to preclude the introduction of the allegedly privileged document in these proceedings and a related motion to intervene are currently before the Court. For the reasons set forth below, the Court concludes that it must deny

the motion to preclude the introduction of the contested document and deny the motion to intervene as moot.[1]

## I. BACKGROUND

Effective December 24, 2003, the IRS recognized the Foundation as a tax-exempt organization under 26 U.S.C. § 501(c)(3) "created to assist the educational development of descendants of Hungarian [i]mmigrants who had a particular interest and talent in the arts." Pl.'s Mot. at 5; see also Def.'s Opp'n at 5. The Foundation is funded entirely with a charitable bequest by the Estate of Julius Schaller. Pl.'s Mot. at 5; Def.'s Opp'n at 5. Prior to his death, Julius Schaller engaged attorney Gary B. Freedman to draft his will. Pl.'s Mot. at 5. The will drafted by Freedman was subsequently executed, and Schaller later died on December 28, 2003. Id.

In 2005, the co-executors of Schaller's will, Barrett Weinberger and Frances Odza, along with the will's beneficiaries, retained attorney Stephen R. Bolden to bring suit against Freedman for malpractice in drafting Schaller's will. Id. at 6; Def.'s Opp'n at 6. A December 18, 2005 letter from Barrett Weinberger to Stephen Bolden is at the center of the dispute before the Court. In it, Weinberger describes the relationship between the Estate of Julius Schaller and the Foundation. See Pl.'s Mot., Exhibit ("Ex.") 2 (December 18, 2005 Letter from Barrett Weinberger to Stephen R. Bolden ("Weinberger-Bolden Letter")).

---

[1] In addition to the documents already referenced, the Court considered the following filings in reaching its decision: (1) the Plaintiff's Reply Memorandum in Support of Its Motion to Preclude the Government from Introducing Privileged Letter from Barrett Weinberger to Attorney Stephen Bolden and the Entire Administrative Record, and for Related Relief ("Pl.'s Reply"), (2) the Motion to Intervene Filed by Barrett Weinberger and Frances Odza, Co-Executors of the Estate of Julius Schaller, and the Entire Class of Beneficiaries of the Estate of Julius Schaller ("Mot. Intervene"), (3) the Supplement to Motion to Intervene Filed by Barrett Weinberger and Frances Odza, Co-Executors of the Estate of Julius Schaller, and the Entire Class of Beneficiaries of the Estate of Julius Schaller ("Intervene Supp."), (4) the United States' Opposition to Motion to Intervene by Barrett Weinberger, Frances Odza, and the Beneficiaries of the Estate of Julius Schaller ("Intervene Opp'n"), and (5) the Reply Brief in Support of Motion to Intervene Filed by Barrett Weinberger and Frances Odza, Co-Executors of the Estate of Julius Schaller, and the Entire Class of Beneficiaries of the Estate of Julius Schaller ("Intervene Reply").

In March 2007, the IRS initiated an audit of the Foundation. See Pl.'s Mot., Ex. 8 (Case Chronology) at 2.[2] The IRS subsequently commenced a criminal investigation of Barrett Weinberger, Pl.'s Mot. at 8 n.4; Def.'s Opp'n at 7, and, in January 2008, conducted an audit of the Schaller Estate's tax return, Pl.'s Mot. at 7. On April 20, 2009, the IRS sent an Information Document Request to the Foundation in connection with the ongoing investigation. See Pl.'s Mot., Ex. 6 (April 20, 2009 Information Document Request ("April 20 Request")). In addition to asking for further documentation from the Foundation, the IRS enclosed several documents, including the Weinberger-Bolden Letter, with the following instructions:

> Enclosed with this [Information Document Request] are records received from another IRS operating division with regards to the arrangement between the Estate of Julius Schaller and The Educational Assistance Foundation For Descendants of Hungarian Immigrants in the Performing Arts, Inc. Such records are being provided to you for comment so they can be included in the administrative record. If you have any comments on such records, please respond in writing.

Id. at 6. Barrett Weinberger responded in a letter dated April 29, 2009, with the following:

> I am in receipt of your Information Document Requests #4, #5, and #6 (Form 4564) addressed to the Educational Assistance Foundation for Descendants of Hungarian Immigrants in the Performing Arts, Inc.
>
> While I remain committed to my previous promise to cooperate as fully as possible with your ongoing audit, due to the ongoing and concurrent criminal investigation (from which you obtained some of the records on which you have asked me to comment) and on the advice of my counsel, I cannot presently provide you with any testimony, comment on any documents, nor address any of your inquiries.

Pl.'s Mot., Ex. 9 (April 29, 2009 Letter from Barrett Weinberger to IRS) at 2. In June 2009, the IRS discontinued the criminal investigation of Weinberger. See Pl.'s Mot., Ex. 8 (Case Chronology) at 32.

---

[2] For ease of reference, the Court has assigned page numbers to each of the parties' exhibits beginning in each case with the exhibit cover page followed by the order of the pages as submitted to the Court.

The audit of the Foundation continued, however, culminating in a November 13, 2009 letter to the Foundation proposing the revocation of its tax-exempt status and enclosing a Report of Examination detailing the agency's reasoning for the proposed revocation. Pl.'s Mot., Ex. 7 (November 13, 2009 Proposed Revocation ("Proposed Revocation")) at 2. The Weinberger-Bolden Letter is referenced and quoted in the Proposed Revocation. Id. at 14–15. By letter dated January 11, 2010, Weinberger, on behalf of the Foundation, submitted a protest to the Proposed Revocation. Pl.'s Mot., Ex. 10 (January 11, 2010 Protest ("Protest")) at 3. The Protest raised the following concerns about the records relied upon by the IRS in reaching its decision:

> The letter referenced in the [Proposed Revocation] is problematic in this investigation and action for it is clearly and facially protected from review by the attorney-client privilege. The letter is a correspondence from the undersigned, individually, to Stephen [R.] Bolden, Esq., a partner of the law firm of Fell and Spalding. Mr. Bolden represented the plaintiffs in their claim against Gary Freedman. While it is unclear how this letter found its way into the administrative file for this matter, it is clear that it should be excised and not relied upon.

Id. at 7. A footnote immediately following the quoted passage states that "[i]n an August 17, 2007 Information Document Request . . . from [IRS agent] Andrew Hay to the Taxpayer, Mr. Hay indicates that this letter was obtained 'from another IRS operating division[,]' yet requested comment on its contents."[3] Id. at 7 n.5. Aside from disputing the summary of the letter's contents as "taken out of context and poorly summarized for the purpose of connoting a malicious intent" and as "impl[ying] inappropriate conduct," these are the sole references to the Weinberger-Bolden Letter in the Foundation's Protest. Id. at 7, 8–9. The IRS ultimately issued

---

[3] Although the Foundation's Protest lists the date of the Information Document Request which referenced the Weinberger-Bolden Letter as August 17, 2007, all other references to this Information Document Request have indicated that it was dated April 20, 2009. Accordingly, the Court assumes that designating the date of the Information Document Request as August 17, 2007 in the Foundation's Protest is a typographical error.

4

a final revocation of the Foundation's tax-exempt status. Def.'s Opp'n at 6; see also Pl.'s Mot. at 4.

The concurrent audit of the Schaller Estate's tax return resulted in an assessment for additional taxes and penalties based on the IRS' disallowance of the Estate's charitable contribution to the Foundation. Pl.'s Mot. at 7. On December 19, 2008, the Estate filed a petition with the United States Tax Court challenging the assessment. Def.'s Opp'n, Ex. F (Notification of Receipt of Petition and Petition); see also Pl.'s Mot. at 7. During discovery in the litigation before the Tax Court, the IRS produced portions of its criminal investigation file created during the investigation of Barrett Weinberger. Pl.'s Mot. at 7–8. After discovering the Weinberger-Bolden Letter in the file, counsel for the Estate of Julius Schaller sent a letter to the IRS on December 1, 2010, asserting that the letter was a privileged communication and "request[ing] the IRS immediately segregate [the Weinberger-Bolden Letter] from the rest of its files, and return all copies of said document to [the Estate] as soon as possible." Id. at 8; Pl.'s Mot., Ex. 3 (December 1, 2010 Letter from Ian Comisky to IRS ("Comisky-IRS Letter")). The Estate also asked the IRS to "advise [it] as to any use that the IRS has made of this document to date, and the manner in which this document came into your possession." Pl.'s Mot. at 8; Pl.'s Mot., Ex. 3 (Comisky-IRS Letter). The IRS did not respond to the Estate's letter, Pl.'s Mot. at 8; Def.'s Opp'n at 17, and the Estate subsequently filed a motion with the Tax Court to preclude the IRS from using the Weinberger-Bolden Letter in those proceedings, Pl.'s Mot. at 8. However, the motion was not resolved before the Tax Court litigation was stayed pending resolution of this case. See id. at 6 n.2.

This case was initiated by the Foundation on August 30, 2011. Following the parties' settlement of issues raised by the United States in a motion to dismiss, the parties filed a joint statement on August 2, 2012, in advance of the initial scheduling conference that was conducted

in this case. Joint Report by the Parties, ECF No. 26.  In the joint statement, the Foundation stated that it "believes that the administrative record in this matter contains information protected by the attorney-client privilege, and that the IRS used privileged information in making its determination to revoke [the Foundation's] tax exempt status." Id. at 6.  The Foundation further indicated its intent to file a motion "challenging the use of information protected by the attorney-client privilege during its audit of [the Foundation]" and asserted its position that the administrative record compiled by the IRS should not be filed on the public docket until this motion is resolved by the Court.  Id.  During the initial scheduling hearing in this case, the Foundation again raised a concern about the inclusion of what it believed were privileged documents in the administrative record.  See Transcript of August 9, 2012 Initial Scheduling Conference at 4:2–6:1, ECF No. 34.  Before the Foundation filed its motion, the United States filed the administrative record containing the Weinberger-Bolden Letter and a memorandum quoting portions of the letter, and the Foundation moved to seal the administrative record and to strike the memorandum from the docket.  See Plaintiff's Motion to Seal Administrative Record and for Related Relief at 1, ECF No. 35; Plaintiff's Motion to Strike the United States' Memorandum Regarding Scope of Review in 26 U.S.C. § 7428 Declaratory Judgment Action and for Related Relief at 1, ECF No. 39.  The Court granted both motions and ordered both the administrative record and the United States' memorandum referring to the Weinberger-Bolden Letter stricken from the record.  See ECF Nos. 37, 40, 41.

The Foundation subsequently filed the motion currently before the Court challenging the inclusion of the Weinberger-Bolden Letter in the administrative record and its use by the IRS. As its explanation for how it acquired the Weinberger-Bolden Letter, the United States submitted with its opposition to the Foundation's motion an affidavit from Shaun Thurston, a Special

6

Agent with the IRS Criminal Investigation Division. Def.'s Opp'n, Ex. 1 (Thurston Affidavit) ¶ 1. In it, Thurston avers

> [a]lthough I am not absolutely certain, to the best of my recollection the [Weinberger-Bolden Letter] was provided to me under IRS Summons by the accountant who had been retained with respect to the filing of the federal estate tax return for the Estate of Julius Schaller. That accountant was Craig Cohen . . . .
>
> To the best of my recollection, the [Weinberger-Bolden Letter] was provided to me by Mr. Cohen intentionally, and not inadvertently.

Id. ¶¶ 4–5. In response to Agent Thurston's representations, the Foundation submitted affidavits from Barrett Weinberger and Craig Cohen. Pl.'s Reply, Ex. 1 (Weinberger Affidavit), Ex. 2 (Cohen Affidavit). In his affidavit, Weinberger asserts that he has never intentionally disclosed the Weinberger-Bolden Letter to any third party and never provided a copy of the letter to Craig Cohen. Pl.'s Reply, Ex. 1 (Weinberger Affidavit) ¶¶ 12, 14. For his part, Cohen states that while he did provide Thurston with documents in response to a summons,

> I have . . . reviewed my files relating to the Estate of Julius Schaller, including copies of the documents my firm provided to IRS Special Agent Thurston. The [Weinberger-Bolden Letter] is not in our files. At no time did I (or anyone else at my firm) ever provide a copy of the [Weinberger-Bolden Letter] to IRS Special Agent Thurston.

Pl.'s Reply, Ex. 2 (Cohen Affidavit) ¶¶ 4, 6.

Simultaneously with the filing of the Foundation's reply brief, Barrett Weinberger and Frances Odza, as co-executors of the Estate of Julius Schaller, and the entire class of beneficiaries of the Estate of Julius Schaller moved to intervene in this litigation in order to assert attorney-client privilege with respect to the Weinberger-Bolden Letter. Mot. Intervene at 1. The Court now turns to the parties' arguments regarding the acquisition and use of the letter.

## II. ANALYSIS

### A. Standing to Assert the Attorney-Client Privilege

As an initial matter, the United States argues that the Foundation lacks standing to assert

the attorney-client privilege as to the Weinberger-Bolden Letter because the privilege is held by Weinberger, Frances Odza, and the beneficiaries of the Estate of Julius Schaller.[4]  Def.'s Opp'n at 13–14.  The Foundation argues in response that Barrett Weinberger, who serves as the president and director of the Foundation, can properly assert the privilege here because Stephen Bolden represented him in the malpractice litigation regarding the Schaller will.  Pl.'s Reply at 11.  Nonetheless, Weinberger, Odza, and the beneficiaries of the Schaller Estate have moved to intervene in order to assert the privilege in the event that the Court disagrees with the Foundation's arguments on this point, Pl.'s Reply at 11–12; Mot. Intervene at 1, and have adopted the Foundation's arguments regarding the Weinberger-Bolden Letter as their own,[5] Intervene Reply at 2 n.2.

As explained below, the Court finds that the actions taken to assert the privilege of the Weinberger-Bolden Letter and to recover it from the IRS after discovery of its disclosure were inadequate to protect any privilege with respect to the document and that the privilege has therefore been waived.  It is undisputed that Barrett Weinberger learned that the IRS had acquired the Weinberger-Bolden Letter in April 2009.  Whether he learned this information while he was acting in the capacity of president of the Foundation rather than as a beneficiary of

---

[4] The United States also argues that the Foundation has not established that the Weinberger-Bolden Letter is a privileged communication.  Def.'s Opp'n at 9–13.  Because the Court determines that any privilege as to the document was waived, it will assume without deciding that the Weinberger-Bolden Letter would otherwise be protected by attorney-client privilege if not for its inadvertent disclosure.

[5] The only argument regarding the Weinberger-Bolden Letter advanced solely by the movants is that Barrett Weinberger "did not have the authority to unilaterally waive the privilege on behalf of the entire class of beneficiaries of the Estate of Julius Schaller."  Intervene Reply at 5–6.  Relying on In re Teleglobe Communications Corp., 493 F.3d 345 (3d Cir. 2007), and Magnetar Technologies, Corp. v. Six Flags Theme Park Inc., 886 F. Supp. 2d 466 (D. Del. 2012), the movants argue that waiver of a joint-client privilege requires the consent of all joint-clients and that the United States has not shown that all of the Estate beneficiaries consented to waive a claim of privilege in regard to the Weinberger-Bolden Letter.  Intervene Reply at 5–6.  The movants' reliance on this line of authority is misplaced, however, because the requirement of universal consent applies when one client seeks to <u>intentionally</u> waive the privilege.  By contrast, the question before the Court here is whether the attorney-client privilege was <u>unintentionally</u> waived by the inadvertent disclosure of the Weinberger-Bolden Letter.

the Estate of Julius Schaller (and thus the client of Stephen Bolden), Weinberger may not willfully ignore his knowledge that this document was disclosed simply because he learned of the disclosure while acting on behalf of the Foundation. Such indifference to the disclosure of the letter is inconsistent with the principle that "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived." In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989). Armed with knowledge of the disclosure, Weinberger had the ability to act to preserve the privilege, yet, he did not. Consequently, the Court need not determine whether the Foundation can raise the privilege because regardless of who holds the privilege, the actions taken by any of the parties involved here were insufficient to preserve it. The motion to intervene by the co-executors and beneficiaries of the Schaller Estate is thus denied as moot.

### B. Acquisition of the Weinberger-Bolden Letter

As noted previously, the parties offer differing theories as to how the IRS acquired a copy of the Weinberger-Bolden Letter. Both the Foundation and the United States agree that the letter was likely obtained during the criminal investigation of Barrett Weinberger, see Pl.'s Mot. at 12; Def.'s Opp'n at 7, consistent with the IRS' initial representations to the Foundation regarding the source of the letter, Pl.'s Mot., Ex. 6 (April 20 Request) at 6 (identifying the records enclosed with the Information Document Request, including the Weinberger-Bolden Letter, as "received from another IRS operating division"). Relying on IRS Special Agent Shaun Thurston's affidavit, the United States contends that the Weinberger-Bolden Letter "was voluntarily and intentionally provided to it, most likely by the accountant retained to prepare the Schaller Estate's estate tax return." Def.'s Opp'n at 7 (citing Def.'s Opp'n, Ex. 1 (Thurston Affidavit) ¶¶ 4–5). However, as the Foundation correctly points out, see Pl.'s Reply at 7, Thurston does not possess personal knowledge of the source of the letter, averring that while "to the best of [his]

9

recollection," the Weinberger-Bolden Letter was intentionally provided to him by Craig Cohen, he is "not absolutely certain" about how he received it, Def.'s Opp'n, Ex. 1 (Thurston Affidavit) ¶¶ 4–5.

In addition to disputing that Craig Cohen intentionally provided the Weinberger-Bolden Letter to Thurston, Pl.'s Reply at 8 (citing Pl.'s Reply, Ex. 1 (Weinberger Affidavit) ¶¶ 12, 14, Ex. 2 (Cohen Affidavit) ¶ 6), the Foundation asserts that the IRS obtained the letter improperly, see Pl.'s Mot. at 12 n.9; Pl.'s Reply at 8–11. In support of its contention that the IRS illegally acquired the Weinberger-Bolden Letter, the Foundation points to "[t]he conflicting positions taken by the government in its responses" regarding how the IRS acquired the letter, Pl.'s Reply at 8 & n.5, the United States' inability to conclusively state how the IRS obtained the letter, id. at 10, and the United States' failure to produce a case chronology log for the criminal investigation of Barrett Weinberger, id. at 10–11, as suggestive of wrongdoing. As to the argument that the alleged inconsistency in the United States' explanations regarding the acquisition of the letter supports the position that it was improperly obtained, the Court first notes that it discerns no inconsistency in the representations provided by the United States to this Court or the Tax Court, which uniformly maintain that the document was either intentionally or inadvertently provided to the IRS during the criminal investigation of Barrett Weinberger. See Pl.'s Mot. at 11 (quoting counsel for the United States during the initial scheduling hearing in this case as stating that "we believe the document they are referring to was actually submitted to the Internal Revenue Service"); id. at 12 (quoting counsel for the United States during a motion hearing in this case as stating that "[w]e believe it was obtained as part of the . . . criminal investigation . . . of Mr. Weinberger"); Pl.'s Reply at 7 (citing Thurston's affidavit, which states that he believes the letter was provided to him by Craig Cohen during the criminal investigation of Barrett Weinberger); Pl.'s Reply at 8 n.5 (stating that during briefing on this issue before the Tax Court, the United

States represented that the Weinberger-Bolden Letter "was freely provided to Special Agent Thurston and was either a voluntary disclosure or an inadvertent disclosure," but not identifying that Thurston allegedly received the document from Cohen) (emphasis removed). While the United States' representations include varying levels of detail regarding the acquisition of the letter, they all reflect the general contention that the Weinberger-Bolden Letter was either intentionally or inadvertently provided to Shaun Thurston during the criminal investigation of Barrett Weinberger.

Most importantly though, like the deficiency identified by the Foundation in Thurston's affidavit, the Foundation similarly can produce no individual with personal knowledge that the IRS improperly obtained the Weinberger-Bolden Letter and the documents submitted to the Court with its motion provide no evidence whatsoever of such wrongdoing.[6] Absent evidence demonstrating the contrary, courts generally accord agencies the presumption of administrative regularity and good faith. FTC v. Owens-Corning Fiberglas Corp., 626 F.2d 966, 975 (D.C. Cir. 1980) (citations omitted). The Court will not impute wrongdoing to the IRS based on nothing more than the Foundation's speculation that IRS agents acted improperly, particularly when human error appears to be at least an equally plausible explanation for how the IRS acquired the Weinberger-Bolden Letter. See United Mine Workers of Am. Int'l Union v. Arch Mineral

---

[6] In a footnote in its reply brief, the Foundation suggests that discovery should be conducted regarding "the Special Agent's report and chronology as to when he obtained the [Weinberger-Bolden Letter]; who the Special Agent consulted with at IRS counsel before providing the letter to the revenue agent handling the Foundation audit; and who the revenue agent consulted with before employing the [Weinberger-Bolden Letter] and using it to support the revocation of the Foundation's tax exempt status." Pl.'s Reply at 11 n.6. To be sure, "[a] claim of privilege must be 'presented to a district court with appropriate deliberation and precision' before a court can rule on the issue." SEC v. Lavin, 111 F.3d 921, 928 (D.C. Cir. 1997) (citation omitted). Neither party suggests here that the record is insufficiently developed to permit the Court to rule on this issue based on the filings submitted to the Court and the attached exhibits, many of which were culled from an administrative record with which both parties are already familiar. Moreover, the discovery contemplated by the Foundation is focused primarily on the use of the Weinberger-Bolden Letter by the IRS rather than the letter's acquisition and thus would be of little assistance in reaching a determination on the issues at hand. Accordingly, the Court declines to permit discovery on the issues raised by the Foundation prior to ruling on the Foundation's motion.

Corp., 145 F.R.D. 3, 6 (D.D.C. 1992) (declining to infer wrongdoing in the acquisition of allegedly privileged documents because the party asserting the privilege produced no evidence to support its allegations).

Having rejected the Foundation's assertion that the Weinberger-Bolden Letter was improperly acquired by the IRS, the Court concludes that the letter was either intentionally or inadvertently disclosed to the IRS. As noted previously, the parties have produced contradictory evidence regarding whether the disclosure of the letter was made by Craig Cohen. And as to the possibility that the Weinberger-Bolden Letter was inadvertently produced, neither party has proffered evidence on this point. Indeed, the very nature of inadvertent production would in all likelihood result in the individual who accidentally disclosed the document not having a current recollection of disclosure. The Court need not resolve this remaining dispute, however, because, even if the disclosure was inadvertent, the Court finds that the privilege has been waived, as explained below.

### C. Waiver of the Privilege

With respect to disclosure of a communication covered by the attorney-client privilege, Federal Rule of Evidence 502 provides that

> [w]hen made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). The party asserting the privilege, even if disclosure of the communication was inadvertent, bears the burden of establishing each of these three elements. Williams v.

District of Columbia, 806 F. Supp. 2d 44, 48 (D.D.C. 2011) (citations omitted). The Advisory Committee Notes for Rule 502(b) set forth several non-dispositive factors often used to evaluate whether an inadvertent disclosure has effected a waiver of the privilege, including "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness." Fed. R. Evid. 502 advisory committee's note (2007).

The Foundation argues at the outset that Rule 502 does not apply because Federal Rule of Evidence 101 states that the Rules "apply to proceedings in United States courts," and when the Foundation first learned that the IRS possessed the Weinberger-Bolden Letter, "there was no litigation, only an administrative audit by the IRS of the Foundation" and thus there was "no 'proceeding' in any United States court at that time." Pl.'s Reply at 17. The plain language of Rule 502, however, expressly contemplates an inadvertent disclosure of a communication "to a federal office or agency," and sets forth the circumstances under which "the disclosure does not operate as a waiver in a federal or state proceeding." Fed. R. Evid. 502(b). Moreover, the Advisory Committee Notes specifically state that Rule 502(b) "applies to inadvertent disclosures made to a federal office or agency, including but not limited to an office or agency that is acting in the course of its regulatory, investigative or enforcement authority," Fed. R. Evid. 502 advisory committee's note (2007), and courts have used Rule 502(b) to determine whether disclosure to an agency prior to litigation waives any privilege asserted regarding a document in subsequent litigation, see SEC v. Welliver, No. 11-CV-3076 (RHK/SER), 2012 WL 8015672, at *6–8 (D. Minn. Oct. 26, 2012) (assessing whether attorney-client privilege was waived by inadvertent disclosure of documents during pre-litigation investigation by the Securities and Exchange Commission). Rule 502 therefore applies in this proceeding to determine whether the

13

prior inadvertent disclosure of the Weinberger-Bolden Letter to the IRS precludes the assertion of any claim of privilege concerning the letter.

Alternatively, the Foundation contends that even if Rule 502(b) applies, it has taken adequate steps to assert the privilege and redress the disclosure of the Weinberger-Bolden Letter by raising the issue in its January 11, 2010 Protest to the Proposed Revocation and in motions it has filed with this Court and the Tax Court. Pl.'s Reply at 17. The Court disagrees that these half-hearted and untimely attempts to assert the privilege are sufficient to preserve any claim of privilege as to the document. Barrett Weinberger first learned that the IRS possessed a copy of the Weinberger-Bolden Letter when it enclosed a copy of the letter in its April 20, 2009 Information Document Request, but took no action whatsoever to assert the privilege until January 11, 2010, over eight months later. Even then, the Foundation did not make any attempt to recover the Weinberger-Bolden Letter, but merely asserted its position that the document was protected by the privilege and thus "should be excised and not relied upon." Pl.'s Mot., Ex. 10 (Protest) at 7. Neither the Foundation nor the Schaller Estate beneficiaries demanded the return of the document until December 1, 2010, nearly two years after Weinberger learned that the IRS possessed it. Such an inordinate delay in action to recover the document is inconsistent with the confidentiality objective which underlies the attorney-client privilege. See United States v. Ary, 518 F.3d 775, 784 (10th Cir. 2008) (reasoning that expeditious claims of privilege serve the purposes of the attorney-client privilege by preserving the confidentiality of the allegedly privileged communication); United States v. de la Jara, 973 F.2d 746, 750 (9th Cir. 1992) (concluding that the defendant's delay in seeking recovery of privileged communication "allowed 'the mantle of confidentiality which once protected the document[]' to be 'irretrievably breached,' thereby waiving his privilege"); see also In re Sealed Case, 877 F.2d at 979–80 ("[I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client

communications like jewels—if not crown jewels."). Indeed, much shorter delays in seeking recovery of privileged documents have been deemed to waive the privilege. See, e.g., Ary, 518 F.3d at 785 (finding assertion of privilege six weeks after learning of disclosure to be untimely); Murray v. Gemplus Int'l, S.A., 217 F.R.D. 362, 366 (E.D. Pa. 2003) (finding eleven week delay to be incompatible with maintaining privileged character of communications); see also Amobi v. D.C. Dep't of Corrs., 262 F.R.D. 45, 55 (D.D.C. 2009) (commenting that it was a "debatable proposition" that attempting to rectify an inadvertent disclosure fifty-five days after discovery qualified as sufficiently prompt to protect attorney-client privilege but finding privilege waived on different ground in any event).

On this point, the Foundation contends that Weinberger's failure to assert the privilege with respect to the Weinberger-Bolden Letter in response to the April 20, 2009 Information Document Request did not effect a waiver because he did not comment on it and instead, on the advice of counsel, invoked his Fifth Amendment right against self-incrimination due to the ongoing criminal investigation. Pl.'s Reply at 12–13. The Foundation offers no explanation, however, for Weinberger's continuing failure to act after June 2009 when the criminal investigation was discontinued. While the record is unclear regarding when Weinberger learned that the IRS had decided not to prosecute him, Weinberger's assertion of the privilege in the Foundation's January 11, 2010 Protest indicates that he knew he was no longer under investigation by that point. Yet, nearly a year elapsed before anyone affiliated with the Foundation or the Estate of Julius Schaller made any attempt to actually recover the document. While the concurrent criminal investigation may have excused Weinberger's failure to act immediately in response to the Information Document Request, it cannot absolve him of his obligation to act for the entire period of time at issue here.

Even if the Court could find that the Foundation or the beneficiaries of the Schaller Estate made timely efforts to recover the Weinberger-Bolden Letter, the intermittent nature of these efforts also weighs in favor of a finding that the privilege was waived. While the Foundation and the beneficiaries of the Schaller Estate have raised the claim of privilege on several occasions since learning of the disclosure of the Weinberger-Bolden Letter in April 2009, long periods of inaction have followed most of the attempts to recover the document. For example, when the IRS failed to respond to the December 1, 2010 letter requesting the segregation and return of all copies of the Weinberger-Bolden Letter, the Foundation identifies no further efforts to assert the privilege or recover the document until the issue was raised in a motion before the Tax Court one year later. See Pl.'s Mot. at 8; Pl.'s Mot., Ex. 4 (December 7, 2011 Order) at 2. Isolated efforts to recover privileged communications do not absolve the party asserting privilege of any further action, but rather put the privilege holder on notice that further action is required. See Williams, 806 F. Supp. 2d at 52 (rejecting alleged privilege holder's argument that its notification of the inadvertent disclosure and demand for return of the document was sufficient to preclude a finding of waiver under Rule 502(b) because privilege holder took no further steps to recover the document after receiving no response); IMC Chems. v. Niro, Inc., No. 98-2348-JTM, 2000 WL 1466495, at *27 (D. Kan. July 19, 2000) (finding four letters, two of which specifically demanded return of the documents, to be insufficiently persistent to maintain privilege). Here, the IRS consistently ignored the Foundation's and the Estate's occasional efforts to retrieve the Weinberger-Bolden Letter. Instead of taking additional steps to recover the letter, the alleged privilege holders allowed the letter to remain with the IRS with full knowledge that the agency continued to use it without limitation. As another court put it, "[t]hat is not how one protects privileged documents." IMC Chems., 2000 WL 1466495, at *27.

16

The Foundation claims that "[t]here were no other avenues that Mr. Weinberger, the beneficiaries, the Foundation, or the Estate could have pursued in order to claim this document is privileged and has been wrongfully obtained and used by the government," other than raising the issue in the litigation pending before this Court and the Tax Court. Pl.'s Reply at 15–17. To be sure, seeking judicial intervention is a powerful way to assert a privilege and seek to recover a privileged communication that has been inadvertently disclosed. Cf. Bowles v. Nat'l Ass'n of Home Builders, Inc., 224 F.R.D. 246, 254–57 (D.D.C. 2004) (holding that failure to seek judicial intervention for fifteen months even though privilege holder repeatedly asserted privilege in correspondence fatally undermined privilege claim). However, the fact that the Foundation and the Estate did seek judicial intervention on two occasions does not excuse their failure to take other steps to protect the privilege, such as engaging in a consistent course of correspondence with the IRS demanding the return of the Weinberger-Bolden Letter. The Court discerns no reason why more persistent and prompt efforts could not have been taken to recover the document, even when litigation was not pending.

This Circuit's opinion in SEC v. Lavin, 111 F.3d 921 (D.C. Cir. 1997), does not change the result here. Lavin involved an assertion of the marital privilege as to conversations recorded on tapes in the possession of Jack Lavin's employer. 111 F.3d at 923–24. In reversing the district court's finding that the Lavins had waived any privilege in the conversations by failing to promptly assert the privilege and take adequate steps to recover possession of the tapes, the Circuit declined to find an affirmative duty to preemptively assert the privilege when "there was no event that should have triggered their assertion of the privilege," instead finding it sufficient that the Lavins claimed the privilege once they learned that the Federal Reserve Bank of New York sought production of the tapes. Id. at 931. The Circuit also rejected the district court's emphasis on the Lavins' failure to obtain physical possession of the tapes as "irrelevant" because

17

"any access [to the tapes] was encumbered by the Lavins' assertion of the privilege." Id. at 931–32. Lavin, however, pre-dates the 2007 revisions to Rule 502 which addressed waiver by inadvertent disclosure. Moreover, the Lavins made far more significant efforts to preserve their privilege, including securing an agreement to maintain confidentiality of the tapes with the possessor of the tapes and immediately asserting the privilege upon learning that the tapes had been requested by the Federal Reserve Bank, id. at 931–32, in contrast to the two discontinuous attempts to assert privilege and protect the confidentiality of the Weinberger-Bolden Letter.

The Foundation further argues that no additional actions should be required of it because "[t]he IRS was aware that the Foundation was not represented by counsel [during the Foundation audit], and it is the IRS [that] should have strictly adhered to its ethical obligations and notified the Foundation, the Estate, and its beneficiaries that a privileged communication had been obtained." Pl.'s Reply at 13–14. Whether an attorney's failure to return an allegedly privileged document upon learning of its inadvertent disclosure constitutes an ethical breach has no bearing on this Court's assessment of whether the privilege holder acted reasonably to rectify the inadvertent disclosure of the Weinberger-Bolden Letter under Rule 502(b), which puts this burden squarely on the shoulders of the privilege holder, not the recipient of a potentially privileged communication. Additionally, the Court notes that while the Foundation was not represented by counsel during its audit by the IRS, the record indicates that Barrett Weinberger holds a juris doctor and was a practicing attorney from 1983 to 1995. See Pl.'s Mot., Ex. 10 (Protest) at 6. The Court thus presumes that Weinberger has some familiarity with the attorney-client privilege and accordingly finds the Foundation's suggestion that its pro se status imparts some additional obligations on IRS counsel unpersuasive. Cf. Richards v. Duke Univ., 480 F. Supp. 2d 222, 234 (D.D.C. 2007) (holding that pro se plaintiff who is an attorney is "presumed to

18

have a knowledge of the legal system" and thus is not given great latitude normally afforded to pro se litigants).

In addition to the delay in asserting the privilege in the Weinberger-Bolden Letter and seeking its recovery, the Court finds that other factors weigh in favor of finding that the privilege has been waived. The proceedings between the IRS, the Foundation, and the Estate of Julius Schaller did not involve thousands of documents, but rather a relatively small set of records that could be easily reviewed and controlled. Fairness and the extent of the disclosure here also support a finding of waiver. The IRS has possessed and relied on the Weinberger-Bolden Letter since 2009 in reaching decisions in three separate investigations regarding the relationship between the Estate of Julius Schaller and the Foundation. And its ongoing use of the document was well-known to all interested parties. To expunge this document now would require a wholesale rewriting of history between the IRS, the Foundation, and the Schaller Estate. As this Circuit opined with respect to a similar request, "it would be unfair and unrealistic now to permit the privilege's assertion as to th[is] document[] which ha[s] been thoroughly examined and used by the Government for several years" because "the disclosure cannot be cured simply by a return of the document[]." In re Grand Jury Investigation of Ocean Transp., 604 F.2d 672, 675 (D.C. Cir. 1979); see also Ary, 518 F.3d at 784 (noting that a consequence of failing to expeditiously assert a privilege is that a government investigation "may irreparably rely on the protected information, thereby tainting the investigation," resulting in waiver). Here too, the Court finds that "[t]he privilege has been permanently destroyed." In re Grand Jury Investigation of Ocean Transp., 604 F.2d at 675.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that any attorney-client privilege that would otherwise protect the Weinberger-Bolden Letter has been waived through the document's

inadvertent disclosure and the failure of the alleged privilege holders to take appropriate steps to promptly assert the privilege and aggressively seek to recover the letter. Accordingly, the Court must deny the Foundation's motion regarding the United States' use of the Weinberger-Bolden Letter in these proceedings and its inclusion of the letter in the administrative record, and deny the motion to intervene as moot.

**SO ORDERED** this 27th day of March, 2014.[7]

REGGIE B. WALTON  
United States District Judge

---

[7] An Order consistent with this Memorandum Opinion will be issued contemporaneously.